USCA1 Opinion

 

 November 10, 1994 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1638 NORBERTA BATISTA-CANALES, Plaintiff, Appellant, v. SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Cyr, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Juan R. Requena Davila and Juan A. Hernandez Rivera on brief for _______________________ _________________________ appellant. Guillermo Gil, United States Attorney, Maria Hortensia Rios, ______________ ______________________ Assistant United States Attorney, and Nancy B. Salafia, Assistant _________________ Regional Counsel, Department of Health and Human Services, on brief for appellee. ____________________ ____________________ Per Curiam. Claimant, Norberta Batista-Canales, ___________ appeals from the judgment of the district court affirming the decision of the Secretary of Health and Human Services that she is not entitled to Social Security disability benefits. Claimant filed an application for disability benefits on March 14, 1991, listing as disabilities asthma and a back condition. She alleged an onset date of April 1, 1985; her insured status expired on September 30, 1990. After a hearing, an administrative law judge (ALJ) determined that claimant's impairments, as of September 30, 1990, did not prevent her from performing her past work as a machine operator in the electronics industry. In this job, she assembled parts by soldering them together; she functioned in a seated position and was not required to lift more than 10 pounds at a time. She stopped working in February 1985 when the company closed. Specifically, the ALJ found that claimant suffered from severe degenerative disease of the facet joints in her spine, chronic lumbosacral sprain, allergic rhinitis, bronchial asthma and depression. He credited her allegations of pain to the extent that she was precluded from performing more than sedentary work. He next found that claimant had the residual functional capacity to engage in work that did not involve (1) prolonged walking or standing, (2) lifting more than 10 pounds, (3) frequent bending, and (4) exposure to dust, fumes, gases, detergents and perfumes. The Appeals Council denied claimant's request for review. On appeal to this court, claimant first asserts that the ALJ was not qualified to assess whether her prior work was free of the above pollutants. She cites to Social Security Ruling 85-15 which provides, in part, that "[w]here an individual can tolerate very little noise, dust, etc., the impact on the ability to work would be considerable because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." Social Security Ruling 85-15 goes on to distinguish between the above situation and one requiring only avoidance of _________ excessive amounts of pollutants. In the latter case, "the impact on the broad world of work would be minimal because most job environments do not involve great noise, amounts of dust, etc." Where the level of restriction "falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a VS [vocational specialist]." Claimant argues that because there was no evidence from which the ALJ could have concluded that her past work was compatible with the limits placed on her by her asthma, the ALJ should have consulted a VS. Although the ALJ did not specify the level of claimant's environmental restriction, we do not need to reach this issue. There is substantial evidence in the record to support the conclusion that claimant's asthma, prior to September 30, 1990, imposed -3- minimal restrictions on her abilities to function at work. As such, the impact on the number of sedentary jobs would be small. Before September 1990, there is only one reference to an asthmatic condition. In January 1990, claimant underwent surgery to remove a cyst due to chronic maxillary sinusitis. See Exhibit 14. The diagnoses were bronchial ___ asthma and allergic rhinitis. A chest X-ray taken at this time revealed clear lungs and claimant's prognosis was considered to be good. The rest of the medical evidence is from 1991 and 1992. Specifically, claimant's treating physician, Dr. Juan de los Santos, did not mention a diagnosis of chronic bronchial asthma until March 1991. See ___ Exhibit 11. There is no evidence in the 1990 reports concerning any treatment for claimant's asthma during the period of time _________ for which she was insured. The diagnosis of bronchial asthma standing by itself is insufficient to establish claimant's entitlement to disability benefits. See Tsarelka v. ___ ________ Secretary of Health and Human Services, 842 F.2d 529, 534 ________________________________________ (1st Cir. 1988) (per curiam). In any event, Dr. de los Santos stated that claimant experienced only two attacks per month, each one lasting 15 to 20 minutes. See Exhibit 11. ___ Further, in two residual functional capacity (RFC) assessments, completed by non-examining physicians in 1991, -4- claimant was rated as having no environmental restrictions. Given the paucity of evidence indicating a more severe condition, the ALJ's conclusion that claimant's asthma did not preclude her from performing her past work is sufficiently supported. Claimant's second argument on appeal is that the ALJ did not engage in the correct analysis in evaluating her complaints of disabling pain. Specifically, claimant asserts that, at the hearing, the ALJ failed to inquire about the nature of the pain, the effectiveness of any medication or other treatment, and the impact the pain had on claimant's daily activities and functional restrictions. At the hearing, claimant was questioned by her attorney concerning her back pain. She testified that she experiences stabbing pain in the left side of her back and in her left leg. As a result of this pain, claimant stated that she could not bend over to pick up something from the floor and that after sitting, she must straighten herself out slowly in order to be able to stand. She also must change position frequently and must crawl to dress herself. Since the first episode of back pain in April 1985, the pain has worsened. Further, in a disability report, claimant stated that she could not lift or carry heavy objects, could not sit for any length of time and must avoid bending. She cannot perform household chores. -5- In his decision, the ALJ referred to the above information in evaluating claimant's pain. He also relied on the complaints of pain that claimant presented to a consulting neurologist on April 30, 1991. Therefore, we think that the ALJ correctly applied Avery v. Secretary of _____ ____________ Health and Human Services, 797 F.2d 19 (1st Cir. 1986). As _________________________ for the severity of claimant's pain, the ALJ, in fact, credited her allegations of disabling pain in determining that work more arduous than sedentary would aggravate her condition. This finding is supported by the record. As the ALJ pointed out, claimant only received treatment on one occasion prior to the expiration of her insured status. Claimant was hospitalized from April 11 to April 15, 1985 due to severe lumbosacral myositis. See ___ Exhibit 20. A note dated April 12, 1985 stated that claimant was markedly improved. When she was discharged claimant was stable but still had some lumbosacral discomfort. According to Dr. de los Santos, a C-T Scan, performed two months prior to claimant's hospitalization, was within normal limits, despite a finding of degenerative joint disease in the facet joints. The only other reference to claimant's back is an X- ray report dated June 30, 1990. It showed mild spondyloarthritic changes of the L4 vertebra, with well- preserved vertebral height and intervertebral spaces. -6- Claimant did not seek any other treatment for her back until March 1991 when she began seeing Dr. Noreiga Sanchez. Again, the lack of medical evidence for the relevant time period supports the decision of the ALJ that claimant could perform her past work. Also, the two 1991 RFC assessments indicate that claimant can frequently lift up to 25 pounds and can sit, stand and walk for up to six hours each in an eight-hour work day. Finally, the consultative neurology examination in April 1991 showed normal gait, posture and muscle tone. Claimant could pick up pieces of paper from the floor without difficulty. There was no atrophy and claimant retained full range of motion in all extremities. For the foregoing reasons, the judgment of the district court is affirmed. ________ -7-